**Gerald Lee BARELA, Petitioner,**

v.

**The PEOPLE of the State of Colorado, Respondent.**

**No. 91SC113.**

Supreme Court of Colorado, En Banc.

Jan. 27, 1992.

Jeffery R. Kelley, Englewood, for petitioner.

Robert R. Gallagher, Jr., Dist. Atty., James C. Sell, Chief Deputy Dist. Atty., Englewood, for respondent.

Justice QUINN delivered the Opinion of the Court.

We granted certiorari to consider whether the district court erred in reversing the county court's dismissal of criminal charges against the defendant, Gerald Barela, and in remanding the case to the county court for trial. The county court heard and granted the defendant's motion to suppress evidence after a jury had been impaneled but had not yet been sworn to try the case, and then dismissed the unsworn jury after the prosecutor initially announced an intention to file an interlocutory appeal from the suppression ruling. The prosecutor later reconsidered the matter and decided not to appeal the suppression ruling, but another judge of the county court, on the day of the rescheduled trial, dismissed the case with prejudice, ruling that the dismissal of the unsworn jury and the rescheduling of the trial violated due process of law. We disapprove the procedures employed by the county court in this case, but hold that the rescheduling of the defendant's trial did not violate any speedy trial or due process rights of the defendant. We accordingly affirm the judgment of the district court, and remand the case to that court with directions to return the case to the county court for further proceedings.

I.

The defendant was charged with driving under the influence,[1] careless driving,[2] and leaving the scene of an accident,[3] all of

1. § 42–4–1202, 17 C.R.S. (1991 Supp.).

2. § 42–4–1204, 17 C.R.S. (1984).

3. § 42–4–1404, 17 C.R.S. (1984).

which allegedly occurred on October 29, 1989. The defendant posted bail and was represented by counsel during the course of the subsequent proceedings. On December 20, 1989, the defendant entered a not guilty plea to the charges, and the case was set for a jury trial on February 6, 1990. Before the scheduled trial date, the defendant filed a motion to suppress evidence seized from his home and garage on October 29, 1989, the date of his arrest. Before the suppression motion was heard, the defendant filed a motion for a continuance of the trial date and expressly waived his right to a speedy trial. The court granted the request for a continuance and reset the case for a jury trial on April 9, 1990.

On the scheduled trial date, the prosecutor and defense counsel conducted a voir dire of the jury panel during the morning session of court and ultimately selected six persons to serve as the jurors in the case. The court, however, did not swear the jurors to try the case but rather excused them until the afternoon session of court. When the court commenced in the afternoon, it conducted an evidentiary hearing on the defendant's motion to suppress evidence. So far as we can determine from the record, the procedure followed by the court of impaneling but not swearing the jurors in the morning session of court and in hearing suppression motions in the afternoon session was developed by the county court in order to permit prosecution witnesses to testify on suppression motions during the same session of court as their scheduled trial testimony.

After hearing evidence on the suppression motion, the court suppressed the evidence seized from the defendant's home but refused to suppress evidence seized from his garage. The court then asked the prosecutor whether she intended to file an interlocutory appeal from the suppression ruling, and the prosecutor answered that an interlocutory appeal would be filed. The court thereupon discharged the unsworn jury and recessed for approximately thirty minutes to allow the prosecutor and defense counsel to confer about a possible disposition before resetting the case for

trial. When the court again convened, the prosecutor, who during the recess had conferred with her superiors regarding the suppression motion, informed the court that the case could not be resolved by a plea agreement and that an interlocutory appeal would not be pursued. When the prosecutor requested the court to reset the case for trial, the defendant moved to dismiss the charges on the basis that any further trial would violate the constitutional prohibition against double jeopardy. The court ruled that jeopardy had not attached because the jury had not been sworn, but granted the defendant permission to file a written motion to dismiss. After offering defense counsel several trial dates, all of which were unacceptable, the court recused itself from hearing any further matters on the case and the case was rescheduled for trial before a different judge on July 16, 1990.

Before the rescheduled trial date, the defendant filed a motion to dismiss, claiming that the prosecutor's vacillating position on whether to file an interlocutory appeal resulted in denying him his due process right to a trial before the impaneled but unsworn jury. The county court heard the defendant's motion to dismiss immediately prior to jury selection on July 16, 1990, and granted the motion, ruling as follows:

> In the instant case, the jury previously selected by the People and the defendant would have been sworn and the trial conducted, but for a procedure designed to benefit the People. The defendant has been prejudiced in that [h]e has had to bear additional costs. He has had to spend further time with this matter. He has had to labor under additional anxiety. And, he has been denied an opportunity to proceed to trial with a jury of his choosing. The defendant is without fault in this delay. The Court finds, therefore, that the prejudice to the defendant is so substantial as to amount to a denial of substantive due process. Therefore, it is ordered that this matter be dismissed with prejudice.

The People appealed to the district court. It was the People's position that the defendant had no constitutional right to be tried by the impaneled but unsworn jury and that the defendant suffered no prejudice as a result of the rescheduling of the trial following the dismissal of the unsworn jury. The defendant, in contrast, argued that the dismissal of the unsworn jury and the rescheduling of the trial violated not only due process of law but also his right to a speedy trial. In reversing the order of dismissal and remanding the case for trial, the district court ruled as follows:

This court does not concur that the record establishes a denial of substantive due process.

Crim.P. 41.2 authorizes the People to seek interlocutory appeal from a pre-trial county court ruling which, as here, suppresses evidence or an extrajudicial confession or admission. Neither Crim.P. 41.2 nor any other authority precludes the People from reconsidering and withdrawing a stated intention to file an interlocutory appeal. In this case the People, had they chosen to do so, could have used up to five days to determine that they would or would not file. If the People failed to file notice of appeal within five days, their right to appeal would have expired. A motion by the People to set the case for trial would then have been proper. In this case no greater prejudice to the defendant resulted than if the full five day period had been used. There is no factual basis for a finding, and the trial court did not find, that the action of the deputy district attorney was a ruse to secure a continuance or to force a discharge of the jury or was in any other way based upon bad faith.

No speedy trial issue is raised by the facts in this case, as (1) the defendant waived speedy trial on February 26, 1990, and (2) the case was set for trial as expeditiously as was compatible with defense counsel's calendar.

The inconveniences cited by the trial judge as constituting substantive denial of due process are no more than the ordinary vicissitudes commonly met in setting cases for trial consonant with calendars and dockets of busy courts and counsel.

The defendant was not denied the right to trial before a jury of his choosing. The defendant has no right to a specific jury. His right to participate in a second jury selection process was still open to him on July 16, 1990. The original jury not having been sworn, no double jeopardy issue is presented.

We granted the defendant's petition for certiorari to consider whether the procedure followed by the county court—namely, hearing and granting the defendant's motion to suppress after impaneling but not swearing the jury and then dismissing the unsworn jury upon the prosecution's election to file an interlocutory appeal and resetting the case for trial—created the potential for abuse of the interlocutory appeal process authorized by Crim.P. 41.2 and violated due process of law.

## II.

Before considering whether the defendant's constitutional rights were violated by the county court's dismissal of the unsworn jury and the rescheduling of the trial, we address the propriety of the county court's practice of setting suppression motions for hearing after a jury has been impaneled but has not yet been sworn. We conclude that this practice, when adopted and followed as a routine scheduling device, undermines the general procedural scheme contemplated by the Colorado Rules of Criminal Procedure for resolving suppression motions and interlocutory appeals from suppression rulings.

Crim.P. 41(e) provides that a motion to suppress evidence based on an alleged unconstitutional search and seizure "shall be made and heard before trial unless opportunity therefor did not exist or the defendant was not aware of the grounds for the motion, but the court, in its discretion, may entertain the motion at the trial." Crim.P. 41(g) contains a similar requirement with respect to a motion to suppress an alleged involuntary confession or admission made by the defendant. We have emphasized on

more than one occasion the importance of filing and resolving suppression motions in advance of trial. *E.g., People v. Voss*, 191 Colo. 338, 340–41, 552 P.2d 1012, 1014 (1976); *Morgan v. People*, 166 Colo. 451, 453–54, 444 P.2d 386, 387 (1968).

The general requirement that suppression motions be made and heard prior to trial serves several purposes. The expeditious resolution of such motions in advance of jury selection provides both the prosecution and the defense an opportunity to resolve the constitutional admissibility of prosecutorial evidence that often will have a direct effect on trial strategy. In addition, pretrial suppression rulings permit the prosecution and the defense to give adequate consideration to the feasibility of pursuing a plea agreement prior to trial. The seasonable disposition of a case by plea agreement results in more effective use of court time and cuts down on the inconvenience and expense occasioned by last-minute dispositions after a jury panel has been assembled and witnesses have been subpoenaed. Finally, the timely pretrial resolution of suppression motions allows the prosecution a meaningful opportunity to assess the correctness of the suppression ruling and to file an interlocutory appeal from the ruling prior to the attachment of jeopardy.

■ In a trial to a jury, jeopardy attaches when the jury is impaneled and sworn. *Crist v. Bretz*, 437 U.S. 28, 37–38, 98 S.Ct. 2156, 2161–62, 57 L.Ed.2d 24 (1978); *Jeffrey v. District Court*, 626 P.2d 631, 636 (Colo.1981). In a trial to the court, jeopardy attaches when the first witness is sworn. *Serfass v. United States*, 420 U.S. 377, 388, 95 S.Ct. 1055, 1062, 43 L.Ed.2d 265 (1975); *Jeffrey*, 626 P.2d at 636. Because the United States and Colorado Constitutions prohibit placing an accused twice in jeopardy for the same offense, U.S. Const.Amend. V; Colo. Const. art. II, § 18, it necessarily follows that the prosecution's "only meaningful avenue of appeal" from a suppression ruling must occur prior to the

attachment of jeopardy. *People v. Traubert*, 199 Colo. 322, 330, 608 P.2d 342, 348 (1980). Crim.P. 41.2 is designed to provide the prosecution a "meaningful avenue of appeal" from a county court's suppression ruling by authorizing the prosecution to file a notice of appeal with the clerk of the county court and with the clerk of the district court "within five days after the adverse ruling in the county court." Crim.P. 41.2(b).[4]

■ While the issue before us is whether the county court's practice of routinely hearing suppression motions after a jury is impaneled but not yet sworn for trial created the potential for abuse of the interlocutory appeal process, we are convinced from a review of the record that there was no prosecutorial abuse of the interlocutory appeal process in this case. The prosecution, as the district court determined, did no more than assert its right to take an interlocutory appeal from the county court's suppression ruling within the time frame established by Crim.P. 41.2. The dismissal of the unsworn jury and the rescheduling of the trial was not the product of prosecutorial bad faith but, rather, was the direct result of the county court's scheduling practice. The practice at issue was developed by the county court, and, even though instituted for the convenience of prosecution witnesses, it was utilized as a routine scheduling device for setting the county court's docket—a matter for which the county court, and not the prosecution, is ultimately responsible.

To say that there was no prosecutorial abuse of the interlocutory appeal process in this case is not to imply that the county court's scheduling practice is without the potential for serious damage to the parties. On the contrary, we are of the view that the scheduling practice at issue here creates the potential for unnecessary postponements and delays that are inimical to the orderly procedural scheme contemplated by Crim.P. 41.2 for resolving suppression motions. When, for example, a

**4.** C.A.R. 4.1 contains similar procedures for filing an interlocutory appeal in the supreme court from a district court's ruling granting a

motion to suppress under Crim.P. 41.1(e), Crim.P. 41.1(g), or Crim.P. 41.1(i).

trial court grants a suppression motion after jury selection but prior to swearing the jury, it places the prosecution in the awkward position of proceeding to trial with a much weaker case, requesting a continuance in order to file an interlocutory appeal, or attempting to settle the case by a weak plea-offer that might not otherwise be in the interest of justice. On the other hand, when a court denies a suppression motion after a jury has been impaneled but has not yet been sworn to try the case, it might well place the defendant in the position of either requesting a continuance in order to re-evaluate the case or hastily accepting a last minute plea offer which, had the suppression motion been resolved earlier, would have been more thoroughly considered. We accordingly disapprove the county court's practice of routinely scheduling suppression motions subsequent to jury selection but prior to the swearing of the jury for trial.

While we disapprove of the practice employed by the county court, we point out that there may be exceptional circumstances that justify a trial court's scheduling of a suppression motion immediately prior to the attachment of jeopardy or even during the trial itself. The text of Crim.P. 41(e), which states that "the court, in its discretion, may entertain the motion at trial," contemplates that there may be special circumstances which warrant the departure from the general requirement of Crim.P. 41(e) that "[t]he motion shall be made and heard before trial unless opportunity therefor did not exist or the defendant was not aware of the grounds for the motion." These exceptional circumstances, for example, might include an extremely burdensome docket preclusive of a more timely hearing and resolution of the motion, the justifiable unavailability of witnesses or counsel for an earlier hearing date, the unavoidable continuance of a previously scheduled motion to the trial date, or other unforeseen circumstances.

In the instant case, however, the record discloses no exceptional circumstances warranting the scheduling and hearing of the suppression motion after the jury had been impaneled but had not yet been sworn.

What the record shows is that the court's scheduling practice resulted in a waste of considerable time and effort spent in jury selection. The county court, in our view, could easily have scheduled the suppression ruling well in advance of the trial date without creating any undue hardship on witnesses, the defendant, the prosecuting attorney, or defense counsel.

### III.

■ We turn now to whether the dismissal of the impaneled but unsworn jury and the rescheduling of the trial violated due process of law. We believe it appropriate to put to rest at the outset any notion that the rescheduling of the trial somehow violated the constitutional prohibition against twice placing the defendant in jeopardy for the same offense. U.S. Const. Amend. V; Colo. Const. art. II, § 18. When the county court discharged the jury on the afternoon of April 9, 1990, the jury had been impaneled but had not yet been sworn to try the case. Consequently, any rescheduling of the defendant's trial would not implicate the double jeopardy prohibitions of either the United States or Colorado Constitution. *See, e.g., Crist,* 437 U.S. at 37–38, 98 S.Ct. at 2161–62; *Jeffrey,* 626 P.2d at 636. It is also important to keep in mind that, as the district court remarked in its ruling, there is no support in the record for any finding that the prosecutor's initial announcement to take an interlocutory appeal was utilized as a pretext to secure a continuance or to discharge the jury.

■ The county court, in its dismissal ruling, emphasized that the dismissal of the unsworn jury and the rescheduling of the trial caused the defendant additional anxiety, delay, and expense so as to constitute a violation of substantive due process. Those factors relied on by the county court are the very same factors critical to resolving whether an accused's constitutional right to a speedy trial has been violated. The defendant, although having previously relied on a due process argument in obtaining the dismissal of the case in the county court, asserted in the district court, as he

does in his brief filed in this court, that his right to a speedy trial also had been violated.[5]

■ In *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the United States Supreme Court adopted a four-factor balancing test for resolving a speedy trial issue under the Sixth Amendment. The *Barker* test considers the length of the trial delay, the reason for the delay, whether the defendant asserted his right to a speedy trial, and whether any prejudice resulted to the defendant from the delay. 407 U.S. at 530, 92 S.Ct. at 2191. These four factors, the Court emphasized, have no talismanic quality, but rather must be applied on an ad-hoc basis to the particular circumstances of the case. *Id.* at 533, 92 S.Ct. at 2193. We adopted the *Barker* standard in analyzing a speedy trial claim under the Colorado Constitution. *People v. Small*, 631 P.2d 148, 154 (Colo. 1981).

■ We acknowledge that an accused's right to be treated with fundamental fairness is implicit in the concept of due process of law and is more expansive in its scope than the specific constitutional guarantee of the right to a speedy trial. *See, e.g., People ex rel. Coca v. District Court*, 187 Colo. 280, 284–85, 530 P.2d 958, 960–61 (1975); *People v. Abrahamsen*, 176 Colo. 52, 57–58, 489 P.2d 206, 209 (1971). Whether an accused's right to due process and fundamental fairness has been violated by improper judicial action raises a fact specific issue, the resolution of which depends on the particular circumstances of the case. *See People v. McClure*, 756 P.2d 1008, 1011 (Colo.1988). We are satisfied that the county court's action in dismissing the unsworn jury and in rescheduling the defen-

dant's trial, whether analyzed under the rubric of speedy trial or due process of law, was not violative of the defendant's constitutional rights. Several factors lead us to this conclusion.

The length of the delay caused by the dismissal of the jury and the rescheduling of the trial was only three months, a period of time which can hardly be considered excessive. Indeed, the record discloses that on April 9, 1990, immediately following the suppression ruling and the dismissal of the unsworn jury, the court offered several dates to defense counsel during the next two months. Defense counsel, however, rejected all of these dates because of other scheduled matters. Moreover, the reason for the delay, as we previously discussed in part II, was to permit the prosecution to file an interlocutory appeal from the suppression ruling—a procedure expressly authorized by Crim.P. 41.2 in order to obtain appellate review of the suppression ruling prior to the attachment of jeopardy.

To be sure, the rescheduling of the trial undoubtedly resulted in some degree of continued anxiety for the defendant and perhaps additional expense. Although these factors are not insignificant, they unfortunately are present to some extent in every rescheduling of a criminal trial and certainly, at least under the circumstances here, are not dispositive of the issue before us. What is critical in our view is that the defendant has failed to demonstrate that the dismissal of the unsworn jury and the rescheduling of the trial would likely result in hampering him in his defense against the charges, would deprive him of important witnesses or exculpatory evidence, or otherwise would prejudice him in any signifi-

---

5. There is no question in this case that the defendant was accorded his *statutory* right to a speedy trial within six months from the date of arraignment. *See* § 18–1–405(1), 8B C.R.S. (1986); Crim.P. 48(b)(1). The defendant was arraigned on December 20, 1989, and the case was originally set for trial to a jury on February 26, 1990. On the scheduled trial date, however, the defendant expressly waived his right to a speedy trial, and the trial was continued at his request until April 9, 1990. After the unsworn jury was dismissed by the county court on April

9, 1990, following the court's suppression ruling, the new trial date of July 16, 1990, was well within the six-month period next following February 26, 1990, when the defendant waived his right to a speedy trial. The fact that the defendant was accorded his *statutory* right to a speedy trial, however, does not necessarily resolve whether the delay occasioned by the dismissal of the impaneled but unsworn jury and the rescheduling of the trial violated the defendant's *constitutional* right to a speedy trial or was otherwise violative of due process of law.

cant way. In summary, we find no basis in either the constitutional right to a speedy trial or in the more expansive concept of due process of law to sanction the county court's dismissal of the case with prejudice.

The judgment of the district court is accordingly affirmed, and the case is remanded to that court with directions to return the case to the county court for further proceedings.